**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| C.F.M.E., | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:26-cv-02269-SHL-tmp |
| | ) | |
| TRINITY MINTER, Warden, West | ) | |
| Tennessee Detention Facility, et al., | ) | |
| Respondents. | ) | |

**ORDER DENYING RESPONDENTS' MOTION TO RECONSIDER AND ORDERING
RESPONDENTS TO SHOW CAUSE OR, ALTERNATIVELY, RELEASE PETITIONER**

Before the Court are C.F.M.E.'s Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) and Respondents' Motion to Reconsider Order Granting in Part and Denying in Part Petitioner's Emergency Motion for Injunctive Relief (ECF No. 18). Petitioner M.E. challenges his arrest without advance notice or hearing in March 2026 by Immigration and Customs Enforcement ("ICE") officers, and his continued detention without bond, as violative of Fifth Amendment due process, the Immigration and Nationality Act ("INA"), Administrative Procedure Act ("APA"), and Supreme Court precedent. (ECF No. 1 at PageID 38–53.) Generally, Respondents assert that this Court lacks jurisdiction to stay M.E.'s removal[1] and consider the Petition, and, alternatively, assert that his mandatory detention is lawful. (See ECF Nos. 17, 18.) For the reasons that follow, Respondents' Motion to Reconsider (ECF No. 18) is **DENIED**, and Respondents are **ORDERED TO SHOW CAUSE** as to whether M.E. was afforded process under 8 C.F.R. § 241.4 or, in the alternative, release M.E.

---

[1] "Removal" means deportation.

## I.    BACKGROUND

On February 10, 2017, M.E., a citizen of Guatemala, entered the United States near Lukeville, Arizona, without being admitted or paroled.  (ECF No. 17-1 at PageID 168.)  He was eleven years old at the time and accompanied by his father.  (ECF Nos. 1 at PageID 12; 17-4 at PageID 179.)  The next day, on February 11, M.E. was arrested by ICE and served with a Notice to Appear that charged him with being "an alien present in the United States who has not been admitted or paroled."  (ECF No. 17-1 at PageID 168.)  That same day, ICE also issued M.E. an Order of Release on Recognizance ("OREC"), or ICE Form I-220A, which (a) released him from ICE custody; (b) provided several conditions that he must follow while on release; (c) notified him of an immigration hearing, the date, time, and location of which would be determined; and (d) notified him that "[f]ailure to comply with the conditions of this order may result in revocation of your release and your arrest and detention by Immigration and Customs Enforcement."  (ECF No. 17-2 at PageID 170.)  M.E. signed that OREC paperwork.  (Id.)

On April 27, 2017, the immigration court mailed M.E. a Notice of Hearing, advising him of an immigration hearing scheduled for June 14.  (ECF No. 17-4 at PageID 179.)  Later in 2017, the immigration court rescheduled M.E.'s hearing two more times and mailed him a Notice of Hearing both times.  (ECF No. 17-4 at PageID 179.)  M.E.'s hearing was ultimately scheduled for February 21, 2018.  Also, in 2017–18, M.E. and his parents changed their address, and his parents notified the Department of Homeland Security ("DHS") of their move.  (ECF No. 1 at PageID 12.)

M.E. did not appear at the February 2018 hearing.  Therefore, the immigration judge ("IJ") ordered his removal in absentia.  (ECF No. 17-3 at PageID 173.)  According to M.E., he was unaware of the hearing because "the Executive Office of Immigration Review was not

2

notified" of his change of address, given his parents' failure to properly notify federal authorities. (ECF No. 1 at PageID 12.)

However, M.E. later filed a motion to reopen the removal order proceedings, which the immigration court denied on January 14, 2020. (ECF No. 17-5 at PageID 182.) M.E. appealed that decision to the Board of Immigration Appeals ("BIA"), and the BIA dismissed M.E.'s appeal on March 4, 2021. (ECF No. 17-4 at PageID 176–77.)

Years passed and M.E. continued to live with his father in the United States. On March 12, 2026, M.E. accompanied his father to an immigration check-in at the Nashville, Tennessee ICE office. (ECF No. 1 at PageID 12.) There, without any advance notice, ICE arrested M.E. and served him with a Warrant of Removal / Deportation based on the Final Order of Removal from 2018. (ECF No. 17-5 at PageID 183.) Thereafter, ICE moved M.E. to the West Tennessee Detention Facility in Mason, Tennessee.

M.E. filed this Petition on March 13, 2026. (ECF No. 1.) He challenges his detention without notice of the revocation of his OREC status as violative of his Fifth Amendment due process rights. (Id. at PageID 2.) He asserts that Respondents also violated the INA (at 8 U.S.C. § 1231), its implementing regulations at 8 C.F.R. §§ 241.4 and 241.13, the APA, and the Accardi doctrine, by failing to "follow their own rules, procedures, and instructions" in not providing him advance notice of his purportedly terminated OREC status and detention. (Id. at PageID 2, 21, 38–53.) M.E. seeks immediate release, and an injunction preventing Respondents from enforcing ICE Policy Number 11005.4, which allows ICE to ignore pending visa applications when determining whether to engage in civil immigration enforcement. (Id. at PageID 56.)

Respondents filed the Response on March 25, 2026, arguing that (1) M.E. should be required to exhaust administrative remedies, (2) he is lawfully detained under 8 U.S.C. § 1231

3

because of the IJ's final removal order, and (3) his OREC was cancelled automatically when the removal order became final.  (ECF No. 17.)

## II.     ANALYSIS

### A.     Respondents' Motion to Reconsider

Respondents seek reconsideration of the Court's Order Granting in Part and Denying in Part[2] M.E.'s emergency motion for a stay of his removal from the Western District and United States (ECF No. 13).  (ECF No. 18.)  Respondents assert that this Court lacks subject matter jurisdiction to stay M.E.'s removal during the pendency of this action, arguing that M.E.'s Petition is functionally a request "to stay the enforcement of his long-standing final order of removal."  (ECF No. 18 at PageID 189.)  According to Respondents, 8 U.S.C. § 1252(g) bars jurisdiction here because M.E.'s arrest was simply an execution of his removal order.  (Id.)

M.E. argues in opposition that the Court has jurisdiction to stay his removal because his Petition is not a challenge to the validity of the decision to execute his final removal order but rather a challenge to his detention despite his pending T-visa application.[3]  (ECF No. 22 at PageID 236–37.)  He argues that the Petition simply presents a "legal question" as to whether ICE can "execute [his removal order] in a posture where removal would, by operation of statute and regulation, automatically and permanently extinguish a trafficking-victim remedy that Congress and DHS had made available."  (Id. at PageID 239.)  M.E. also distinguishes his case from Hamama, as M.E. "does not seek to re-litigate his removal order," whereas the Hamama

---

[2] In accordance with other recent, similar orders in this District, that order stayed M.E.'s removal during the pendency of this Petition, and did not separately address the Federal Rule 65(b) factors for granting a temporary restraining order ("TRO").  (ECF No. 13.)

[3] M.E. also noted, in the original request for a TRO staying his removal, that he sought a stay of removal for a temporary period only as to himself, so that the Court may retain jurisdiction over his action and render a decision on its merits.  (ECF No. 6 at PageID 81.)

court disapproved of stays that allowed Iraqi citizens to pursue motions to reopen in the immigration courts.  (Id.)

Federal courts only have "the power that is authorized by Article III of the Constitution and the statutes enacted by Congress."  Hamama v. Adducci, 912 F.3d 869, 874 (6th Cir. 2018) (quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)).  Eight U.S.C. § 1252(g) precludes a court from exercising jurisdiction over cases premised on any of "three discrete actions that the Attorney General may take: the decision to commence [removal] proceedings, adjudicate cases, or execute removal orders."  Id. (citation modified) (quoting Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 481 (1999)); 8 U.S.C. § 1252(g). But the language of subsection (g) is not a "general jurisdiction limitation," and where a detained immigrant that is subject to deportation proceedings challenges the legality of their detention rather than the execution of their removal, that claim is "independent" from  removal.  Hamama, 912 F.3d at 877; accord K.E.O. v. Woosley, No. 25-cv-74, 2025 U.S. Dist. LEXIS 172361, at *6–8 (W.D. Ky. Sep. 4, 2025).  Thus, if an immigrant in ICE custody challenges the legality of their arrest, or asserts violations of due process during arrest, a court's jurisdiction is not barred by § 1252(g).  K.E.O., 2025 U.S. Dist. LEXIS 172361 , at *8.

The Court has jurisdiction here insofar as M.E.'s claims are based on detention and not on removal.  Respondents erroneously describe the jurisdiction-limiting effect of § 1252(g) as broader than it is and characterize the TRO motion as a request that this Court simply override M.E.'s removal order.  (ECF No. 18 at PageID 189.)  On the contrary, § 1252(g)'s preclusion of jurisdiction is triggered only when a claim is based on the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders."  8 U.S.C. § 1252(g). Given its plain meaning, subsection (g) does not limit jurisdiction here, where a habeas petitioner

in immigration-related custody challenges the process applied to him during his detention.  See

Reno, 525 U.S. at 482 ("It is implausible that the mention of three discrete events along the road

to deportation was a shorthand way of referring to all claims arising from deportation

proceedings.").

And, true, M.E. sought an emergency stay of removal, but that motion was based on his

already pending Petition and his desire for an adjudication of his claims.  As M.E. states, he

"does not seek to permanently enjoin execution of his" removal order, rather "he challenges only

the legality of his current detention, the revocation of his [OREC], and any removal or transfer

during the pendency of this action."  (ECF No. 1 at PageID 3.)  See also K.E.O., 2025 U.S. Dist.

LEXIS 172361, at *6–7 (exercising jurisdiction where the petition "challenges [petitioner's]

arrest, the detention that flowed from the arrest, and the deficient process and procedures ICE

employed in the detention" (citation modified)); Sering Ceesay v. Kurzdorfer, 781 F. Supp. 3d

137, 152 (W.D.N.Y. 2025) ("[D]istrict courts in this circuit have distinguished between

challenges to ICE's discretion to execute a removal order, which are barred, and challenges to the

manner in which ICE executes the removal order, which are not.").

One component of M.E.'s Petition is his argument that ICE cannot act to remove him

during the pendency of his T-visa application.  That may be a removal-based claim over which

the Court lacks jurisdiction.  But because the Court has jurisdiction to determine whether M.E.'s

detention violates the law, and he appears entitled to relief on that issue as explained below, the

Court does not fully consider that argument herein.[4]  Given that the core of the Petition is a Fifth

---

[4] M.E.'s Petition challenges Respondents' enforcement of an ICE policy related to T-visas that ICE amended about eleven months before M.E. filed his T-visa application.  (See ECF No. 1 at PageID 32–34.)  With a T-visa, an immigrant who was previously a victim of human trafficking or their family members are permitted to remain in the United States for up to four years in exchange for their assistance to "law enforcement in the detection, investigation, or

Amendment due process challenge to the validity of M.E.'s detention and the procedural

safeguards that Respondents allegedly failed to follow, this Court has jurisdiction.  Therefore,

Respondents' Motion to Reconsider is **DENIED**.[5]

---

prosecution of human trafficking . . . ."  Victims of Human Trafficking: T Nonimmigrant Status, U.S. Citizenship and Immigration Services: Humanitarian, https://www.uscis.gov/humanitarian/victims-of-human-trafficking-t-nonimmigrant-status (last updated Dec. 22, 2025).

During the few years preceding the Petition, ICE Policy Directive 1105.3 was in place. Directive 1105.3 required ICE personnel to "refrain from taking civil immigration enforcement action against known beneficiaries of victim-based immigration benefits and those known to have a pending application for such benefits."  Thus, if an undocumented immigrant had a pending T-visa application, ICE could not execute a removal order against them until U.S. Citizenship and Immigration Services ("USCIS") made a final decision on the T-visa.  Using a Victim-Centered Approach with Alien Crime Victims, U.S. Immigration and Customs Enforcement (Aug. 8, 2023), https://www.ice.gov/factsheets/using-victim-centered-approach-with-victims.  However, on January 30, 2025, ICE rescinded Directive 1105.3 and issued ICE Policy Number 11005.4.  Immigr. & Customs Enf't, Pol'y No. 11005.4, Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based Immigration Benefits (2025), https://www.ice.gov/doclib/foia/policy/11005.4.pdf. Essentially, Number 11005.4 no longer requires ICE to wait for USCIS's decision on T-visa applications, or to check for them, before arresting or removing an undocumented immigrant.

After Number 11005.4 was published, M.E.'s counsel filed a T-visa application on his behalf in December 2025, based on his status as a victim of trafficking and his cooperation with American law enforcement's investigations of trafficking crimes.  (ECF No. 1-2 at PageID 60.) The T-visa application has been received by USCIS and remains pending.  (Id.)  M.E.'s family— including his father, mother, and younger brother—also filed T-visa applications in 2025.  (Id.)

At this stage, it appears unlikely, given ICE's new policy as to T-visas in January 2025, that M.E. can prevail on a challenge to that new policy when his T-visa application was not filed until much later in the year and was not pending at the time of the change.  To this Court's knowledge, few courts have ruled on this visas policy change since January 2025, and under similar circumstances, several have decided that such challenges attack the federal government's decision to execute removal under 8 U.S.C. § 1252(g).  See Siguencia-Romero v. Joyce, No. 25 Civ. 8975, 2025 U.S. Dist. LEXIS 218500, at *3–12 (S.D.N.Y. Nov. 5, 2025); e.g., D'Ambrosio v. Scott, 784 F. Supp. 3d 699, 704 (D. Vt. 2025) ("[Petitioner] submits that he could argue to USCIS that his removal order was unlawful because it violated ICE Directive 11005.3, which was itself unlawfully rescinded. . . . This requested relief is the kind of indirect challenge to a final order of removal that the Second Circuit held that district courts are foreclosed from adjudicating.").

[5] Because the Court has jurisdiction to stay M.E.'s removal during the pendency of the Petition, see 28 U.S.C. § 1651(a); A.A.R.P. v. Trump, 605 U.S. 91, 96–97 (2025), the Court need not address the Parties' alternative arguments regarding whether a TRO should be granted.

**B.     The Petition**

M.E.'s Petition asserts eight claims.  Relevant here, he alleges that his detention and Respondents' "de facto revocation" of his OREC violates his Fifth Amendment due process rights and the Accardi doctrine.  (ECF No. 1 at PageID 42–43, 49–50.)  Specifically, M.E. alleges that Respondents violated his Fifth Amendment due process rights, and their own regulations, when they appeared at the Nashville ICE office and arrested him without notice or hearing.  (ECF No. 1 at PageID 54.)  He contends that his detention is unlawful under the Fifth Amendment and Accardi because he was detained after the 8 U.S.C. § 1231(a) ninety-day removal period without revocation of his OREC, without any notice from Respondents that he would be arrested, and without the benefit of the procedures under 8 C.F.R. § 241.4(l).  (ECF No. 1 at PageID 25–26, 29–30.)  He alleges that these violations continue because he has not been afforded a hearing as required by 8 C.F.R. § 241.4(l)(1) or (3).  (E.g., id. at PageID 23–24.)

To begin, under United States ex rel. Accardi v. Shaughnessy, 347 U.S. 250 (1954), when the government promulgates administrative regulations "with the force and effect of law," agencies must follow their own "existing valid regulations."  Id. at 266, 268.  "To prove an Accardi claim and a violation of Due Process, the claimant must . . . 'demonstrate prejudice resulting from the violation.'"  K.E.O., 2025 U.S. Dist. LEXIS 172361, at *13 (quoting Am. Farm Lines v. Black Ball Freight Serv., 397 U.S. 532, 538–39 (1970)); see also Resendiz v. Noem, NO. 25-CV-00159, 2025 U.S. Dist. LEXIS 254523, at *17 n.2 (W.D. Ky. Dec. 9, 2025).

Applicable here, after an IJ enters an order of removal against an immigrant, 8 U.S.C. § 1231 governs the immigrant's detention and removal.  8 U.S.C. § 1231.  Generally, "the Attorney General shall remove the" immigrant within ninety days after the removal order, in the "[r]emoval period."  Id. § 1231(a)(1)(A).  The removal period here began on the date that M.E.'s

8

removal order became administratively final in March 2021 and concluded ninety days later in June.  (ECF No. 17-4 at PageID 176.)  See 8 U.S.C. § 1231(a)(1)(B)(i) (stating one of three options for when the removal period begins).  During that period, detention of M.E. was mandatory.  8 U.S.C. § 1231(a)(2).

However, M.E. was not detained or removed during his removal period.  Yet the INA also provides for the myriad circumstances where the Attorney General fails to remove or detain an immigrant during the removal period.  In such cases, an immigrant may be placed on supervision.  8 U.S.C. § 1231(a)(3).  Alternatively, they may be detained if they are inadmissible under 8 U.S.C. § 1182; removable under 8 U.S.C. § 1227(a)(1), (2), or (4); have "been determined by the Attorney General to be a risk to the community"; or have been determined to be "unlikely to comply with the" removal order.  8 U.S.C. § 1231(a)(6).

An OREC is one form of supervised release under § 1231(a)(3).  In this case, M.E. was issued an OREC, which released him from ICE custody subject to written conditions in February 2017.  Ebu v. Tindall, No. 25-cv-779, 2026 U.S. Dist. LEXIS 20063, at *3, 4 (W.D. Ky. Jan. 30, 2026) (describing a habeas petitioner who was subject to an OREC).  (See ECF No. 17-2 at PageID 170.)

The process for revocation of an OREC is typically governed by 8 C.F.R. § 236.1.  However, after a removal order, revocation of an OREC falls under 8 C.F.R. § 241.4(l).[6]  See 8 C.F.R. § 241.4(l) (addressing "Apprehension and Detention of Aliens Ordered Removed" and

---

[6] Furthermore, at any time after the removal period, certain ICE officials may "continue an alien in custody or grant release or parole" based on several enumerated factors.  8 C.F.R. § 241.4(a), (f).  Under § 241, a copy of any decision by the "Executive Associate Commissioner," the "district director," or the "Director of the Detention and Removal Field Office" "to release or to detain an alien shall be provided to the detained alien," and any such detention decision must "briefly set forth the reasons for the continued detention."  Id. § 241.4(d) (emphasis added).

9

"Revocation of release").  A plain reading of the OREC form and § 241.4 reveals that revocation of an OREC is not automatic.  Cf. Boze v. U.S. Dep't of Agric., No. 23-cv-00068, 2025 U.S. Dist. LEXIS 159568, at *16–17 (M.D. Tenn. Aug. 18, 2025) (first citing Roberto v. Dep't of the Navy, 440 F.3d 1341, 1350 (Fed. Cir. 2006); and then citing United States v. Coss, 677 F.3d 278, 283 (6th Cir. 2012)) (explaining that a court interpreting regulations begins with their text and gives that text its plain meaning).  First, the OREC form itself contains a section at the bottom that allows cancellation.  In that section, the ICE official cancelling the OREC must state the reason for cancellation, sign, and date the form.  (ECF No. 17-2 at PageID 170.)

Second, 8 C.F.R. § 241.4(l) governs the revocation of release.  An immigrant on release "who violates the conditions of release may be" taken into custody but must "be notified of the reasons for revocation of" their "release."  8 C.F.R. § 241.4(l)(1).  Then, that immigrant must "be afforded an initial informal interview promptly after [their] return to Service Custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  Id.

Certain ICE officials have discretion to revoke release under enumerated circumstances other than a violation of a condition of release, but those officials must revoke that release pursuant to the above procedures.  8 C.F.R. § 241.4(l)(2); K.E.O., 2025 U.S. Dist. LEXIS 172361, at *15 (describing the overlap between subsections (l)(1) and (l)(2) and collecting cases); Yi Mei Zhen v. Doe, No. 25-cv-01507, 2025 U.S. Dist. LEXIS 151787, at *23 n.19 (N.D. Ohio Aug. 7, 2025).

And, third, after the informal interview in subsection (l)(1), if an immigrant is not released from custody, a review process ensues.  8 C.F.R. § 241.4(l)(3).  That process begins with the Headquarters Post-Order Detention Unit Director ("HQPDU") notifying the immigrant "of a records review and scheduling of an interview."  Id.  The records review and interview are

10

"ordinarily" expected to take place "within approximately three months after release is revoked." Id.  During this process, the immigrant can contest "facts relevant to the revocation." Id.  The review concludes with "a final evaluation . . . and a determination whether the facts as determined warrant revocation and further denial of release."  Id.

Turning to the Petition, M.E. argues that he was arrested and remains in Respondents' custody without the benefit of the procedures under 8 U.S.C. 1231(a) and 8 C.F.R. § 241.4(l). (ECF No. 1 at PageID 25–26, 29–30.)  According to M.E., his OREC was never revoked, and by detaining him without revoking it or giving him notice, ICE wrongfully rescinded it de facto. (Id. at PageID 22–23.)  He further asserts that he was never given either notice before arrest or the "informal interview" after arrest, so he has been denied procedural due process, especially because §§ 241.4 and 241.13 "confer important rights upon aliens ordered removed and must be followed."  (Id. at PageID 25 (quotation marks omitted).)  He highlights that, even if Respondents "were permitted to revoke [his OREC] and re-detain a noncitizen after a prolonged period of supervised release," they can only do so after showing changed circumstances "that make removal significantly likely in the reasonably foreseeable future."  (Id. at PageID 26 (discussing  8 C.F.R. § 241.13(i)).)  Given these alleged failures to follow the relevant immigration statutes and regulations, M.E. asserts that Respondents violate the Fifth Amendment and the Accardi doctrine.

In opposition, Respondents first contend that M.E. should be required to exhaust his administrative remedies before seeking habeas relief.[7]  (ECF No. 17 at PageID 159–60.)  Second,

---

[7] As the Court has ruled similarly in recent immigration-related habeas petitions, e.g., Lopez Soza v. Department of Homeland Security, 26-cv-02224, ECF No. 15 at PageID 88–90 (W.D. Tenn. Apr. 23, 2026), M.E.'s failure to exhaust administrative remedies is **EXCUSED**, because the legal questions presented by the Petition are fit for prompt resolution, and exhaustion would likely be futile as there is no indication that he can seek administrative relief at this stage.

Respondents assert that M.E.'s detention is lawful under 8 U.S.C. § 1231 because he is subject to the IJ's 2018 removal order. (Id. at PageID 160.) Respondents state that due process concerns are not implicated here because M.E. has been detained for a period of less than six months. (Id. at PageID 160–61.)

Respondents' third argument is twofold. To begin, they contend that M.E. is not detained after his removal period, but, instead, is now within the removal period; Respondents aver that the removal period "began to run when he was issued the Warrant of Removal/Deportation" in March 2026. (Id. at PageID 162.) Because M.E. is detained within the removal period pursuant to ongoing "removal proceedings," they argue, his mandatory detention is "lawful and comports with due process." (Id.) In addition, they argue that M.E.'s OREC is a "type of bond" and "was cancelled when" M.E.'s removal order became final on March 4, 2021. (Id. at PageID 162, 164.) Thus, there "was no required review process." (Id.) Given these two points, Respondents argue that they followed the relevant regulations, therefore the due process and Accardi claims fail.

These arguments necessitate a few brief clarifications. Both Parties seem to agree that, since February 21, 2018, M.E.'s immigration-related detention was and remains governed by 8 U.S.C. § 1231. Because M.E. filed a motion to reopen immigration proceedings and appealed that motion to the BIA, the removal period began to run on March 4, 2021, the date that the BIA dismissed his appeal and rendered his prior immigration proceedings "administratively final." See 8 U.S.C. § 1231(a)(1)(B)(i). (See also ECF No. 17-4 at PageID 176.) Thus, M.E.'s removal period concluded ninety days later on June 2, 2021, contrary to Respondents' assertion that that

---

McCarthy v. Madigan, 503 U.S. 140, 144 (1992) (explaining that where a statute is silent as to exhaustion, requiring a claimant to exhaust is within a court's discretion); Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21, 2025) (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385 (2024)); Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025).

period is ongoing.  See Johnson v. Guzman Chavez, 594 U.S. 523, 534–35 (2021) (explaining

when a removal order is "administratively final" under 8 U.S.C. § 1231(a)(1)(B)(i)).

The determination that M.E. is detained after the removal period under 8 U.S.C. § 1231 is

relevant because it impacts which regulation applies to his OREC.  M.E. violated a condition of

his OREC in 2018 by not appearing at an immigration hearing.  (ECF Nos. 17-2 at PageID 170,

172; 17-3 at PageID 173.)  Eight C.F.R. § 236.1 applied from that date until his BIA appeal was

dismissed in 2021.  See 8 C.F.R. § 236.1(b) (governing detentions "any time . . . up to the time

removal proceedings are completed").  Eight C.F.R. § 241.3 applied during the removal period

from March 2021 to June 2021.  8 C.F.R. § 241.3.  Because that removal period concluded, the

applicable section is 8 C.F.R. § 241.4, which is titled "Continued detention of inadmissible,

criminal, and other aliens beyond the removal period."

Apparently, since 2017, M.E.'s OREC status has remained active.  The OREC form's

cancellation section was not filled out or signed during his prior immigration proceedings, nor

was it revoked pursuant to 8 C.F.R. § 241.4(l).  (ECF No. 17-2 at PageID 70 (Respondents'

exhibit showing M.E.'s OREC form with the cancellation section not filled out).)  Therefore, it

appears that if Respondents wanted to revoke his OREC, they had to cancel it, provide him

notice of such cancellation, and provide him "an initial informal interview promptly after his"

arrest.  See 8 C.F.R. § 241.4(l)(1).

Despite these facts, Respondents contend that § 241.4 does not apply, and that M.E.'s

OREC was automatically revoked years ago because it is a "type of bond."  (See ECF No. 17 at

PageID 164 (quoting 8 C.F.R. § 241.3(a)–(b) and arguing "there was no required review process

or necessity of showing 'changed circumstances'").)  However, M.E.'s OREC is a type of

"release," not bond.  The record does not show that he had to post a bond to be released on his

13

own recognizance.

Nor does the record indicate that M.E. received process under § 241.4(l).[8]  As a result,

ICE's arrest and continued detention of M.E. without revoking his OREC under § 241.4(l) was a

violation by Respondents of their own administrative regulations.  They also violated those

regulations by not serving a notice of revocation on M.E.  Moreover, if M.E. was not provided an

"initial interview" after his recent arrest, the failure to be provided that interview was a violation.

These violations "contradict[] the plain text of Section 241.4(l)(1)[,] which directly

provides that the noncitizen will be notified of the reasons for their revocation 'upon revocation'

and that the noncitizen would be afforded an initial interview 'promptly.'  By failing to do these

actions, ICE has necessarily 'violated due process because it thwarts petitioner's ability to

contest that action.'"  K.E.O., 2025 U.S. Dist. LEXIS 172361, at *16 (citation modified)

(quoting Orrellana v. Baker, No. 25-1788, 2025 U.S. Dist. LEXIS 164986, at *20 (D. Md. Aug.

25, 2025)).  Because § 241.4 is "designed to insure the fair processing of an action affecting"

M.E., he was prejudiced by Respondents' violations, removal order or not.  See K.E.O., 2025

U.S. Dist. LEXIS 172361, at *13 (quotation and citation omitted).  Had § 241.4 been followed,

M.E. could have disputed his particularized facts, or argued the merits of his pending T-visa

application before the immigration courts or ICE.  Cf. Mathews v. Eldridge, 424 U.S. 319, 348

(1976) ("The essence of due process is the requirement that a person in jeopardy of serious loss

[be given] notice of the case against him and opportunity to meet it." (alteration in original)

(internal quotation marks omitted)).  Here, M.E. had no opportunity to meet the case against him.

This Court in no way intends to opine on the legality of M.E.'s presence in this country,

---

[8] And Respondents have not shown that the ICE officials decided to arrest M.E. in 2026 based on the factors enumerated under 8 C.F.R. § 241.4(f).

14

or whether the decision to issue the removal order was proper.  In this case, those decisions are the responsibility of the IJs.  The Court's province is instead the "interpretation of the laws" applied to M.E.  See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385 (2024) (quotation marks omitted).  Given that M.E.'s detention is unlawful, and "[h]abeas has traditionally been a means to secure release from unlawful detention," his due process and Accardi claims prevail unless Respondents can show that the proper process was already followed.  See Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 107 (2020).  Absent such a showing, Respondents must return M.E. to the status quo ante and release him from the West Tennessee Detention Facility.

### III.   CONCLUSION

Because the record does not show that the procedures outlined in 8 C.F.R. § 241.4(l) were followed before or during the arrest and detention of M.E., Respondents are **ORDERED TO SHOW CAUSE** as to whether any of 8 C.F.R. § 241.4(l)'s provisions were followed here, within **fourteen days** of the entry of this Order.  If Respondents cannot make that showing by the deadline, they are **ORDERED** to release M.E. from custody as soon as practicable, and file a status update on the docket stating M.E.'s date and time of release.

**IT IS SO ORDERED,** this 8th day of May, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE
